# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| **PITTMAN CONSTRUCTION COMPANY,** **individually and on behalf of all others similarly situated,** | **CASE NO.:** |
| **Plaintiffs,** | **COMPLAINT – CLASS ACTION** |
| **v.** | **JURY TRIAL DEMANDED** |
| **BIO-LAB, INC. and KIK CUSTOM PRODUCTS d/b/a KIK CONSUMER PRODUCTS, INC.** | |
| **Defendants.** | |

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Pittman Construction Company ("Plaintiff"), individually and on behalf of all other businesses and entities similarly situated, by and through its undersigned counsel, brings this action against Defendants Bio-Lab, Inc. ("Bio-Lab") and KIK Custom Products d/b/a/ KIK Consumer Products, Inc. ("KIK") (collectively "KIK Bio-Lab" or "Defendants").  Plaintiff alleges the following based upon information and belief, the investigation of counsel, and personal knowledge and review of public documents and information:

1

## INTRODUCTION

1.     This Class Action seeks redress for businesses located in and around the September 29, 2024 fire at KIK BioLab's chemical manufacturing facility in Conyers, Georgia (the "KIK BioLab Facility Fire"), that resulted in contamination of, and exposure to, massive amounts of toxic chemicals such as chlorine, hydrochloric acid, hydrogen cyanide, hydrogen bromide, phosgene and other volatile byproduct compounds.  As a result of this toxic chemical fire, Plaintiff and Class Members have all suffered, among other things, substantial loss of income, sales and profits as alleged more specifically below.

## THE PARTIES

### *Plaintiff*

2.     Plaintiff Pittman Construction Company ("Plaintiff") is a Georgia corporation with its principal place of business and operations located at 1487 Farmer Road, NW, Conyers, Rockdale County, Georgia, 30012.

3.     Pittman Construction Company was established in 1884.  Plaintiff operates its business in Conyers, Rockdale County, Georgia and employs over 300 individuals, many of whom reside in Conyers, Georgia.  Plaintiff provides asphalt paving, concrete and grading services.   Plaintiff's contributions to the state of Georgia include massive structures and miles of street and interstate construction including Interstate 285/20 East Interchange, Interstate 285, Interstate 75/85, State Highway 92, and State Highway 317.

2

*Defendants*

4.      Defendant BioLab, Inc. ("BioLab") is a private corporation duly organized and existing under and by virtue of the laws of the State of Delaware with its principal place of business located at 101 MacIntosh Boulevard, Concord, Ontario, L4K4R5.

5.      Defendant KIK Custom Products, Inc. d/b/a KIK Consumer Products, Inc. ("KIK") is a corporation duly organized and existing under and by virtue of the laws of the State of Delaware, with its principal place of business, corporate office and headquarters located at 101 MacIntosh Boulevard, Concord, Ontario, L4K4R5.

6.      Upon information and belief, BioLab has consistently held itself out as conducting business affairs as a conduit for KIK in connection with the ownership and operation of their chemical enterprise. Biolab's website refers to itself as a "division of KIK Consumer Products."[1]

7.      Additionally, BioLab and KIK constituted a joint venture in connection with their chemical enterprise inasmuch as they agreed to undertake ownership and operation of the enterprise jointly for the purpose of sharing associated profits and losses, and in connection therewith, each contributed their respective skills, property and resources in exercising control or a right of control over the facilities.

8.      BioLab and KIK own and operate chemical plants throughout the

---

[1] https://www.biolabinc.com/

United States, including Georgia, Louisiana, and Texas.

9.      At all relevant times, BioLab and KIK owned and operated the Conyers, Georgia chemical facility located at 1700 Covington Hwy, Conyers, GA 30012.

## JURISDICTION AND VENUE

10.      This Court has subject matter jurisdiction over the claims asserted in this action under 28 U.S.C. § 1332(d): the amount in controversy exceeds $5,000,000.00, exclusive of interest and costs;  there are more than 100 Class Members; and  Plaintiff and Class members and Defendants are citizens of different states.

11.      BioLab and KIK are each primary defendants in this action.  For purposes of citizenship, each Defendant is incorporated in the state of Delaware and each Defendant's respective principal place of business is in Ontario, Canada.

12.      Each Defendant is directly liable to Plaintiff and the proposed Class and liability should be apportioned equally between the Defendants.

13.      This Court has personal jurisdiction over each Defendant because they each operated their chemical enterprise in this District.  Through their regular business operations in this District, including operating a chemical processing and handling facility in this District, Defendants intentionally and regularly availed themselves of the markets and jurisdiction in this District, conferring this Court with personal jurisdiction over each Defendant.

4

14.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to Plaintiff's claims occurred in the Northern District of Georgia, and Plaintiff and all Class Members were injured because of tortious activity in this District.

## FACTUAL ALLEGATIONS

15.     KIK BioLab has maintained a presence in Rockdale County since 1973.

16.     At all times relevant, KIK BioLab operated, and continues to operate, a chemical plant located at 1700 Covington Hwy, Conyers, GA 30012 (the "Conyers Facility").

17.      Among its operations at the Conyers Facility, KIK BioLab receives, blends, and packages trichloroisocyanuric acid ("TCCA") into finished consumer products.

18.     TCCA is a chlorinating agent which KIK BioLab uses to produce products used in sanitizing swimming pools and hot tubs.

19.     In large bodies of water, such as pools, TCCA breaks down slowly to release hypochlorous acid (HClO), which kills bacteria, algae and other microorganisms. However, when TCCA comes into contact with small amounts of water or moisture, TCCA will experience a chemical reaction causing heat generation and the decomposition of the TCCA. When TCCA reacts and decomposes, it produces toxic chlorine gas and can produce nitrogen trichloride, an

explosion hazard. Chlorine gas is a potentially toxic substance if inhaled and can cause sinus and lung irritation at even low levels of exposure.

20.     According to KIK's Safety Data Sheet on TCCA, "exposure to the solid [TCCA] or to free chlorine evolving from the product" can cause serious and life-threating injuries if inhaled. Per the Safety Data Sheet, TCCA is "fatal if inhaled."

21.     The odor of chlorine gas can be detected at 0.3 parts per million ("ppm").

22.     Airborne chlorine gas > 0.5 ppm exceeds the EPA Acute Exposure Level Guidelines and can cause people to experience notable changes in lung functions.

23.     KIK BioLab's Conyers facility receives dry TCCA from its Lake Charles facility in Westlake, Louisiana.

24.     The TCCA is packed, shipped, and stored in large containers that typically hold 2,750 pounds of the material.

25.     Upon information and belief, at any given time, KIK BioLab has millions of pounds of TCCA inventory at the Conyers facility.

26.     Despite knowing that water coming into contact with stored TCCA could result in catastrophic damage - risking injury to employees and neighboring residents and businesses – KIK BioLab's Conyers facility was not equipped with an automated water detector or alarm system to alert employees of a leak.  Areas storing

TCCA did not have any active floor drains and maintenance was not proactively done to guard against water hazards.

### History of Prior Explosions

27.     Defendants have a history of incidents that have harmed businesses and the public surrounding the Conyers facility. On or around May 25, 2004, a warehouse at the Conyers facility containing roughly 12.5 million pounds of chemicals burned. The fire was caused by an explosion at the Conyers facility fueled by 250,000 pounds of dry chlorine pellets. This fire caused thousands of residents to evacuate and businesses to shut down.  The Conyers facility caught fire, injuring 28 people. The fire produced a toxic chlorine plume that affected businesses and residents within 50 miles of the Conyers facility, and authorities closed Interstate 20. This catastrophe caused the evacuation of all businesses and residences within a 1.5 mile radius of the facility.

28.     On or around June 4, 2016, the Rockdale County Fire Department responded to a chemical decomposition incident at this same location.  The fire was only noticed and reported because a nearby resident smelled smoke and chemicals and called the authorities.  The fire was fueled by reactions from chlorine pellets contained in the storage shed.  Residents within one mile radius of the facility were evacuated

29.     On September 14, 2020, a water line leak in the Conyers facility

resulted in TCCA decomposition and release of large amounts of chlorine gas. Interstate 20 was shut down for 6 hours while chemical plumes were emitting from KIK BioLab Conyers facility.[2] Following the incident, chlorine levels in the air at nearby business properties measured 12 times the permissible exposure limit set by the federal government. Nearby businesses were evacuated and Interstate 20 was closed. The leak and resulting fumes cost an estimated $1,004,000 in property damage.

30.    On September 18, 2020, a second TCCA decomposition event occurred at the Conyers facility, again releasing chemical plumes of toxic chlorine gas into the air. It was determined that this event occurred due to KIK BioLab efforts to save, relocate, and/or store bags of TCCA that had likely gotten wet from the September 14, 2024 event.

31.    KIK BioLab has experienced similar catastrophes at its facilities in other states. In 2017, severe weather led to flooding of a KIK BioLab chemical facility in Crosby, Texas. The water caused chemicals to decompose and resulted in a massive fire, the release of hazardous chemicals and the evacuation of area residents.

32.    Following this incident, the Centers for Chemical Process Safety issued new industry guidance to help hazardous chemical facilities, like KIK BioLab, to

---

[2] https://www.ajc.com/news/business/chlorine-product-maker-biolab-has-history-of-fires-and-chemical-leaks/ET4CU6BAVVD55C2BMLTT7PQ2TY/

ensure they were prepared for severe weather events, like flooding, so chemical incidents could be prevented.

33.    However, KIK BioLab elected not to implement the industry guidance and continued operating at its Lake Charles facility, unprepared for severe weather.

34.    On August 27, 2020, KIK BioLab's Lake Charles facility suffered damage to buildings storing TCCA, allowing rainwater to come into contact with the chemical and initiating a chemical reaction that resulted in a catastrophic fire, releasing a large plum of hazardous gases, including toxic chlorine gas, into the air. This resulted in a shelter-in-place order in the community.

35.    Despite these catastrophes, KIK BioLab has refused to take proper precautions with their volatile and hazardous chemicals to prevent yet another catastrophic toxic chemical reaction, explosion and release.

**The Fire and Resulting Toxic Plume**

36.    On or about September 29, 2024, at or around 5:30 A.M., a fire suppression sprinkler at the Conyers facility activated in an attempt to suppress a chemical fire that had broken out at the Conyers facility. This resulted in the spraying of water onto chemicals inside the Conyers facility, which included TCCA.

37.    At or around 12 P.M. after being initially contained, the fire reignited while workers were attempting to contain the reactive chemicals, thereby resulting in a chemical reaction that produced a massive wall of smoke that contained toxic

chemicals such as chlorine, hydrochloric acid, hydrogen cyanide, hydrogen bromide, and phosgene billowing throughout Rockdale County. The fire caused a "complete collapse" of the Conyers facility building, as the roof caved in and multiple walls fell as a result of the fire.[3]



38.     KIK BioLab did not have an adequate fire protection system in order to quickly and effectively extinguish fires at their facility while also avoiding causing

_____

[3] https://www.al.com/news/2024/09/conyers-biolab-fire-large-cloud-of-smoke-from-georgia-chemical-plant-blaze-seen-for-miles.html

dangerous chemical reactions with water-reactive chemicals. KIK BioLab's failure to possess and utilize an effective fire protection system exacerbated the harm caused by the fire at the Conyers facility and delayed emergency response to the fire.

39. At approximately 1:10 P.M., Rockdale County authorities issued an Evacuation Alert instructing immediate evacuation of the area between Salem Road and Interstate 20 near the Conyers facility and announcing that Interstate 20 would be closing, forcing the closure of businesses and displacing residents.[4]



40. At the same time, Rockdale County authorities announced the closing of Interstate 20 in both directions between Salem Rd and Turner Hill, an eight-mile stretch of the highway, causing significant traffic disruptions and business

---

[4] https://www.rockdalecountyga.gov/updates-on-bio-fire-9-29-24/

interruption. All southbound traffic on Hi-Roc Road between Irwin Bridge and Highway 138 was shut down, and all traffic from Highway 138 to Interstate 20 from Turner Hill Road to Salem Road was shut down.[5]   These closures impacted businesses operating on and near these roadways.



41.    The closure of Interstate 20 and surrounding roads caused additional traffic disruptions and business interruptions.   Interstate 20 was reopened on September 30th, but surrounding roads remained closed continuing to interrupt operations of surrounding businesses.

---

[5] Id; https://www.ajc.com/news/crime/conyers-chemical-plant-fire-what-to-know/ZECJVWIRDNCR5P2DZJFSAXUQ2A/

42.     On September 29th, at approximately 7:45 P.M., Rockdale County authorities issued a shelter-in-place order for all of Rockdale County ("Shelter-in-Place Order").[6]

43.     The Shelter-in-Place order was extended on or about September 30, 2024 and all businesses in Rockdale County were asked to close operations.[7]



**Plaintiff's and Class Members' Experience**

44.     Plaintiff operates its business on a compound located at 1487 Farmer

---

[6] https://www.dailymail.co.uk/news/article-13907263/shelter-place-order- extended-georgia-biolab-fire-conyers.html

[7] https://www.rockdalecountyga.gov/rockdale-county-remains-closed-with-shelter-

Road, NW, Conyers, Georgia, which is less than one mile by road and approximately 3800 feet as the crow flies from KIK BioLab's Conyers facility.

45.     All of the equipment Plaintiff utilizes for its asphalt paving, concrete and grading services throughout the SouthEast is stored at its Conyers compound.

46.     At least one third of Plaintiff's employees reside in Rockdale County and are Rockdale County citizens.

47.     Plaintiff was required to entirely shut down its operations in their entirety for a minimum of three days due to the fire at KIK BioLab's Conyers facility.

48.     Plaintiff's employees were prohibited from reporting to work at the compound due to the fire at KIK BioLab's Conyers facility, toxic smoke and dust plume.

49.     Plaintiff's equipment stored at the compound could not be accessed for use in any projects throughout the Southeast due to the fire at the KIK BioLab's Conyers facility.

50.     Many other businesses operating in Conyers within the radius of KIK BioLab's Conyers facility and in Rockdale County were forced to close following fire at the KIK BioLab Conyers facility, toxic smoke and dust plume.

51.     Georgia Piedmont Technical College closed both their Newton and Rockdale campuses until further notice because of the fire and toxic smoke and dust plume.

52.     Government buildings, including the Rockdale County Courthouse,

14

Administration Building, Water Resources, Elections Office, Animal Services, Tax Commissioner, and Board of Commissioner's Office were all closed on September 30, 2024, due to the fire and toxic smoke and dust plume.

53.    The City of Conyers closed City Hall, municipal court, and Conyers University through October 2, 2024, and cancelled a Conyers Downtown Development Authority meeting scheduled for October 1, 2024.

54.    Government offices in nearby Newton County closed on September 30, 2024, as well due to health concerns.

55.    Churches in Rockdale County, and from Rockbridge to Northside County, were all asked to cancel or immediately end services on Sunday, September 29, 2024.

56.    The Rockdale County Emergency Management Agency mobilized in response to the fire. The state also sent officials from the Georgia Environmental Protection Division ("EPD") to respond and assess the air quality after the fire.

57.    The Federal Environmental Protection Agency ("EPA") also responded, assisting in air quality monitoring and assessment, and the Federal Emergency Management Agency ("FEMA") was called to respond and assist in emergency management as well.

58.    The EPD and the EPA conducted air quality surveys on September 29 and 30, 2024, and the results indicated "harmful irritant chlorine" emitting from the

Conyers facility. The chlorine was present in the plume of smoke coming from the facility, and wind patterns made the toxic chlorine pollution follow an "unpredictable path." [8]

59.     Businesses operating near the Conyers facility have observed smoke and ash debris on their property.

60.     The KIK BioLab Conyers facility has a long history of catastrophes in which hazardous chemicals escaped and adversely impacted businesses in the surrounding areas.   Despite repeated warnings that their conduct would cause catastrophic consequences, Defendants refused to act responsibly.   Now businesses throughout the county are bearing losses as a direct result.

61.     Plaintiff and Class members have suffered business interruptions, property damage, lost profits, loss of use, and expected diminution of property as a direct result of the fire at the KIK BioLab Conyers facility, toxic smoke and dust plume.

62.     Plaintiff brings this action on behalf of itself and the putative class to ensure that Defendants pay for their recklessness, and account for the consequences that Defendants have imposed on businesses in the community.

---

[8] https://www.rockdalecountyga.gov/rockdale-county-remains-closed-with- shelter-in-place-continuing/

## CLASS ACTION ALLEGATIONS

63.     This action is brought as a class action under Fed. R. Civ. P. 23.

64.     Pursuant to Fed. R. Civ. P. 23(a), (b)(2), (b)(3), and (c)(4), Plaintiff seeks to certify and represent a Class defined as follows:

> All individuals or legal entities that owned and operated a business and/or transacted business in Conyers, Rockdale County Georgia that were subject to evacuation and shelter-in-place orders, and/or forced to close and have incurred damages as a result of the September 29, 2024 KIK BioLab Conyers facility fire.

65.     Specifically excluded from the Class are Defendants, including any parent, subsidiary, affiliate, or controlled person of Defendants; Defendants' officers, directors, agents, or employees; government entities; the judges assigned to this case, their immediate families, and court staff, all persons who make a timely election to be excluded from the Class; and insurers and insurance syndicates whose claims for damages regarding the September 29, 2024 KIK BioLab facility fire and resulting toxic chemical explosion, arise out of a right of subrogation.

66.     Plaintiff hereby reserves the right to amend or modify the class definition with greater specificity or subclassing after having had an opportunity to conduct discovery.

67.     The proposed Class meets the criteria for certification under Rule 23(a), (b)(2), (b)(3) and (c)(4).

68.     This action meets the jurisdiction amount under the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2) and (6) because the amount of damages sought on behalf of the putative class exceeds $5,000,000. The putative class consists of tens of thousands of Class members who seek to recover for the losses suffered as a result of evacuation and shelter in place orders, as well as exposure to toxic chemicals, caused by Defendants' wrongful conduct, as described in this Complaint.

### *Numerosity*: *Fed. R. Civ. P. 23(a)(1)*

69.     This action satisfies the requirements of Fed. R. Civ. P. 23(a)(1). The members of the Class are so numerous that joinder of all members is impracticable. The Class is composed of thousands of entities and businesses doing businesses in Georgia, including in Rockdale County, Georgia, and its surrounding communities. Although the exact number of members of the Class is currently unknown to Plaintiffs, the Class is believed to be in the thousands as there are over 2,000 businesses in Rockdale County alone.[9] Class members may be identified through objective means, including objective data available to the Parties regarding the persons and property present in the affected areas following the fire. Class members may be notified of the pendency of this action by recognized, Court- approved notice dissemination methods, which may include U.S. mail, electronic mail, Internet postings, social media and/or published notice. Thus, pursuant to Rule 23(a)(1) of the

---

[9] U.S. Census Bureau QuickFacts: Rockdale County, Georgia; United States

Federal Rules of Civil Procedure, the large size of the Class renders the Class so numerous that joinder of all individual members is impracticable.

### *Commonality: Fed. R. Civ. P. 23(a)(2)*

70.   This action satisfies the requirements of Fed. R. Civ. P. 23(a)(2) because this action involves common questions of law or fact that predominate over questions affecting only individual Class Members.

71.   The common questions include, but are not limited, to the following:

    a.   Whether Defendants operated their chemical enterprise negligently, recklessly, intentionally or otherwise tortiously;

    b.   Whether Defendants owed a duty of care to Plaintiff and the Class;

    c.   Whether Defendants' acts or omissions as set forth herein, breached a duty of care owed to Plaintiff and the Class;

    d.   Whether Defendants' actions constitute negligence per se;

    e.   Whether Defendants violated Georgia statutory nuisance law by emitting air contaminants and/or endangering the health, safety, or welfare of the public, causing unreasonable injury or damage to property;

    f.   Whether Defendants committed trespass on the property of Plaintiff and the Class by Defendants' acts and omissions, including by causing hazardous materials to enter and contaminate Plaintiff's and

Class members' property;

g.   Whether Defendants committed trespass to the chattels of Plaintiff
and the Class members through Defendants' acts and omissions,
including by depriving Plaintiff and Class members of access or
possession or use of their chattels for a substantial time;

h.   Whether the Plaintiffs' and the Class members' businesses have
suffered a loss of income and/or diminution in value as a result of
the Defendants' acts or omissions and subsequent events, including
forced closings.

i.   Whether Defendants' conduct constitutes gross negligence or
willful and wanton conduct, including related to the fire, chemical
reaction/explosion, and subsequent release of toxic and hazardous
substances.

j.   Whether Plaintiff and Class members are entitled to relief for the
damages caused by Defendants.

### *Typicality: Fed. R. Civ. P. 23(a)(3)*

72.   This action satisfies the requirements of Fed. R. Civ. P. 23(a)(3)
because Plaintiff's claims are typical of the claims of the Class Members and arise
from the same course of conduct by Defendants.

73.   Plaintiff owns property, works and operates a business in Rockdale

County, Conyers, Georgia.

74.    Plaintiff's claims are based upon the same legal theories as those of the other Class Members.

75.    Plaintiff's and the other Class Members sustained damages as a direct and proximate result of the same wrongful acts and omissions in which Defendants engaged.

76.    Plaintiff brings claims based upon the same legal theories and under the same law as similarly situated businesses and entities that are members of the Class.

77.    Plaintiff's damages and injuries are typical of those of Class members, and Plaintiff seeks relief consistent with the relief of Class Members.

### *Adequacy: Fed. R. Civ. P. 23(a)(4)*

78.    This action satisfies the requirements of Fed. R. Civ. P. 23(a)(4) because Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff's interests are aligned with the interests of the Class. Plaintiff has no conflicts of interest that will interfere with the maintenance of this class action. Plaintiff's counsel has substantial experience in prosecuting complex class actions, including actions with issues, claims, and defenses similar to the present case.

79.    Plaintiff and its counsel are committed to vigorously prosecuting this action on behalf of the Class Members and have the financial resources to do so. Neither Plaintiff nor their counsel has interests adverse to those of the Class

Members.

### *Predominance and Superiority: Fed. R. Civ. P. 23(b)(3)*

80.     This action satisfies the requirements of Fed. R. Civ. P. 23(b)(3) because a class action is superior to other available methods for the fair and efficient group-wide adjudication of this controversy. The common questions of law and of fact regarding Defendants' conduct predominate over any questions affecting only individual Class members.

81.     The prosecution of this case as a class action presents far fewer management difficulties, far better conserves judicial resources and the parties' resources, and far more effectively protects the rights of each Class member than would piecemeal litigation. Compared to the expense, burdens, inconsistencies, economic infeasibility, and inefficiencies of individualized litigation, any challenges of managing this action as a class action are substantially outweighed by the benefits to the legitimate interests of the parties, the Court, and the public, making class adjudication superior to other alternatives, under Fed. R. Civ. P. 23(b)(3)(D). Should individual Class members be required to bring separate actions, this Court and courts in the surrounding areas of Georgia would be faces with multiple lawsuits burdening the court systems and creating a risk of inconsistent rulings and judgments.

82.     Plaintiffs are not aware of any obstacles likely to be encountered in the management of this action that would preclude its maintenance as a class action.

Rule 23 provides the Court with authority, discretion, and flexibility to maximize the efficiencies and benefits of the class mechanism and reduce management challenges. The Court may, on motion of Plaintiffs or on its own determination, certify classes for claims sharing common legal questions; utilize the provisions of Rule 23(c)(4) to certify any particular claims, issues, or common questions of fact or law for class-wide adjudication; and utilize Rule 23(c)(5) to divide any Class into subclasses.

### *Injunctive and Declaratory Relief:  Rule 23(b)(2) and (c)(4)*

83.    Class certification is also appropriate under Fed. R. Civ. P. 23(b)(2) and (c)(4).  Defendants, through their uniform conduct, acted or refused to act on grounds generally applicable to the Class as a whole, making injunctive and declaratory relief appropriate to the Class as a whole.

84.    Likewise, particular issues under Rule 23(c)(4) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein.

85.    All members of the proposed Class are readily ascertainable as they all own businesses in Rockdale County, Conyers and the surrounding areas. Class members can be identified and their contact information ascertained for purpose of providing notice to the Class.

## COUNT I
## <u>NEGLIGENCE</u>

86.     Plaintiff adopts and incorporates by reference the allegations asserted in paragraphs 1 through 85 as if fully set forth herein.

87.     Defendants actively participated in the processing, handling and storage of hazardous chemicals at its Conyers facility, and as such owed duties of care in that regard.

88.     Defendants owed a duty to maintain, monitor, oversee, inspect, and control the Conyers facility to avoid the release of harmful chemicals into the surrounding community.

89.     Defendants breached these duties, and others, by negligently packaging, maintaining, storing, controlling, overseeing, inspecting, and/or and monitoring the hazardous chemicals.

90.     Further, Defendants breached these duties by allowing the hazardous chemicals to burn, react or otherwise escape from the Conyers facility into the surrounding community.

91.     Defendants owed Plaintiffs and the Class a duty to exercise due care in the manufacturing, maintaining, controlling, overseeing, inspecting and handling of hazardous chemicals.

92.     Defendants breached these duties, and others, by negligently

manufacturing, maintaining, controlling, overseeing, inspecting, and/or and monitoring the hazardous chemicals.

93.    Further, Defendants breached these duties by allowing the hazardous chemicals to burn, react or otherwise escape from the Conyers facility into the surrounding community.

94.    Given the proximity of neighboring property owners, workers, and businesses, and the propensity of catastrophic damage to those individuals and entities in the event of a fire or chemical explosion, Defendants owed and breached a duty to implement and promote safety procedures in every area of its operations.

95.    Defendants owed Plaintiff and Class members a duty of reasonable care commensurate with the risks associated with receiving, handling, processing, and storing hazardous and toxic materials and operating a chemical facility.

96.    Because of the likelihood of contamination of neighboring areas, exposure to their occupants, and disruption to business activities, Defendants each had a duty to operate their facility in a manner which would prevent it from exploding, and contaminating air in neighboring communities.

97.    Defendants were required to conform their conduct to applicable federal, state, and local legal requirements, including without limitation the federal Clean Air Act, the federal Clean Water Act, the federal Resource Conservation and Recovery Act, the federal Comprehensive Environmental Response Compensation

and Liability Act, including specifically the Emergency Planning and Community Right-to-Know Act, Georgia Water Quality Control Act, The Georgia Waste Control Act, the Georgia Hazardous Site Response Act, the Georgia Comprehensive Solid Waste Management Act, and the regulations promulgated pursuant to the statutes.

98.     Defendants each negligently breached their duty of reasonable care and preventing unreasonable harm by, among other things:

     a.  Emitting dangerous volumes of harmful chemical into the environment;

     b.  Failing to employ safe methods to adequately control their chemical enterprises and ensure explosions, ignitions, and runaway chemical reactions did not occur:

     c.  Failing to ensure the adequacy and operation of sprinklers at their Conyers facility;

     d.  Failing to ensure that chemicals were stored in a manner that would prevent them from coming into contact with water;

     e.  Failing to utilize corporate policies and procedures that would prevent ignitions, explosions, and runaway chemical reactions from happening;

     f.  Failing to store hazardous material in such a way as to avoid their contact with populated areas; and

g.  Failing to have or implement a responsible emergency response plans that would minimize and contain the release of toxic chemicals into the environment.

99.   As a direct and proximate result of one or more of the aforementioned negligent acts or omissions, Plaintiff and the other Class members suffered business interruptions, property damage, lost profits, loss of use, and expected diminution of property value.

100.   As a direct and proximate cause of one or more of the aforementioned negligent acts or omissions, Plaintiff and the other Class members have incurred, and will continue to incur, monetary damages arising from the property damage at their businesses, lost profits, and loss of use, and diminution of property value at an amount to be proven at trial.

101.   Defendants, through their knowledge of each other's operations relating to their Conyer's facility, and their financial and other interests and incentives in each other's operation of their Conyers facility, consciously and deliberately pursued a common plant and design to conduct reckless activities and are therefore jointly liable to Plaintiff and Class Members.

102.   Defendants' conduct as alleged herein shows the Defendants acted maliciously, with aggravated or egregious fraud, and/or intentional disregard for Plaintiff's rights so as to warrant punitive damages.

## COUNT II
## <u>WILLFUL AND WANTON CONDUCT</u>

103.   Plaintiff adopts and incorporates by reference the allegations asserted in Paragraphs 1 – 85 as if fully set forth herein.

104.   At all times relevant, Defendants owed a duty to refrain from grossly negligent, willful, wanton, reckless and outrageous conduct and/or conduct which exhibited an utter indifference and/or conscious disregard to the health, safety, and well-being of Plaintiff and the Class Members.

105.   Defendants were, at all times relevant, aware that TCCA is toxic and harmful to humans.

106.   Defendants were aware, at all times relevant, that considerable safety and care was required in the handling, processing, and storage of TCCA.

107.   Defendants were aware, at all times relevant, when TCCA comes in contact with or is moistened by a small amount of water, it can experience a chemical reaction, generating heat and causing the decomposition of the chemical, which in turn produces toxic chlorine gas and can produce explosive nitrogen trichloride.

108.   Defendants, at all times relevant, had thousands of tons of TCCA stored at its facility.

109.   Defendants were aware, at all times relevant, that this volume of TCCA posed a significant risk for a catastrophic chemical fire.

110.   Defendants were aware, at all times relevant, that tens of thousands of people were at risk of injury should there be a chemical fire at its facility.

111.   Upon information and belief, Defendants were aware, at all times relevant, that as little as 0.5 ppm of airborne chlorine gas, could cause injury.

112.   In fact, as set forth above, Defendants previously had multiple chemical fires involving large quantities of TCCA that resulted in evacuations and shelter-in-place orders to the surrounding communities at the Conyers facility and in other states.

113.   Defendants were absolutely aware, at all times relevant, of the considerable risks of TCCA decomposition that could result in the unreasonably dangerous emission of hazardous materials, including chlorine gas, into the surrounding community.

114.   Defendants' repeated incidents involving similar fires, smoke plumes, chemical releases, and toxic smoke and dust emissions from the Conyers Facility reflect a pattern of bad faith, reckless, and willful and wanton conduct on the part of Defendants. Defendants' failure to address the causes of previous incidents and allowing KIK BioLab facility fire to occur without adequately updating fire protection systems and emergency procedures represent bad faith, reckless, and willful and wanton conduct on the part of Defendants.

115.   Defendants' misconduct has been willful, malicious and in reckless and

wanton disregard for the rights of Plaintiff and of others. As such, Defendants should be required to pay punitive damages in an amount that will deter such misconduct in the future.

## COUNT III
## NUISANCE

116.   Plaintiff adopts and incorporates by reference the allegations asserted in paragraphs 1 through 85 as if fully set forth herein.

117.   Plaintiff and Class Member own and operate businesses and have legitimate possessory rights in  affected property near the KIK BioLab Conyers facility and legally protected interests.

118.   Defendants knew or should have known of the risk of fire at the Conyers facility.

119.   Defendants knew or should have known of the risk that a fire at the Conyers facility would result in the release of toxic substances into the surrounding neighborhood and communities.

120.   Defendants knew or should have known of the risk that a fire at the Conyers facility would result in the release of toxic and harmful smoke into surrounding neighborhood and communities.

121.   Defendants knew or should have known of the risk that a fire at the Conyers facility would result in the release of toxic and harmful smoke into the surrounding neighborhood and communities would result in business activities being

shut down for extended periods of time.

122.   Defendants uncontrolled discharge of toxic and harmful substances and smoke has substantially interfered with Plaintiff and other Class members' ability to operate their businesses which constitutes a private nuisance.

123.   As a direct and proximate result of this nuisance, Plaintiff and the other Class members suffered unacceptable and unreasonable interference with the operation of their businesses, interference they should not be required to suffer without compensation.

124.   In causing and allowing hazardous chemicals to escape from their Conyers facility into the open air through their reckless and negligent conduct or omissions, Defendants caused business interruption, shut-down, lost profits and damage to Plaintiff and Class members.

125.   Plaintiff and Class members in this action have sustained harm that is special and distinct from the harm suffered from the general public: Plaintiff and Class members have lost business opportunities, have been exposed to heightened levels of annoying, obnoxious, foul and disgusting fumes/emissions emanating from the Conyers facility, and have been forced to evacuate their businesses on more than one occasion.

126.   The nuisance described above continues to this day and has adversely impacted the businesses and profits of Plaintiff and Class members.

127.   As a direct and proximate result of Defendants' actions, Plaintiff and Class members have and will continue to suffer from lost profits.

128.   Defendants, through their knowledge of each other's operations relating to their Conyers facility, and their financial and other interests and incentives in each other's operation of their Conyers facility, consciously and deliberately pursued a common plant and design to conduct reckless activities and are therefore jointly liable to Plaintiff and Class members.

129.   Defendants' misconduct has been willful, malicious and in reckless and wanton disregard for the rights of Plaintiff and of others. As such, Defendants should be required to pay punitive damages in an amount that will deter such misconduct in the future.

## COUNT IV
## TRESPASS

130.   Plaintiff adopts and incorporates by reference the allegations asserted in paragraph 1 through 85 as if fully set forth herein.

131.   Plaintiff and Class members have legitimate possessory rights in their businesses near the Conyers facility and legally protected interests.

132.   Defendants, through their activities alleged herein, caused hazardous materials to enter and contaminate Plaintiff's and the Class members' property and disrupt their businesses.

133.   Defendants knew, or should have known, that such discharges would enter onto Plaintiff's and Class members' properties and disrupt their businesses.

134.   Defendants' conduct displayed indifference to and disregard for Plaintiff's and the Class members' rights to their property and operation of their businesses.

135.   Defendants, through their activities regarding hazardous materials alleged herein, failed to act in the manner of an ordinary, careful person or business.

136.   The invasion, presence, and spreading of the chlorine and other hazardous chemicals released by Defendants from the facility unreasonably interferes with the Plaintiff and Class members' operation of their businesses and interest in said properties and constitutes trespass and continuing trespass.

137.   As a direct and proximate result of the trespass and continuing trespass, Plaintiff and Class members sustained, and continue to sustain impairment to their legally protected interest in their property as well as economic and property damage.

138.   Defendants, through their knowledge of each other's operations relating to their Conyers facility, and their financial and other interests and incentives in each other's operation of their Conyers facility, consciously and deliberately pursued a common plant and design to conduct reckless activities and are therefore jointly liable to Plaintiff and Class members.

139.   Defendants' conduct as alleged herein shows that Defendants acted

33

with gross neglect, willfully and wantonly, maliciously, with aggravated or egregious fraud, and/or intentionally disregarded Plaintiff's and the Class Members' rights so as to warrant the imposition of punitive damages.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all Class members proposed in this Complaint, respectfully request that the Court enter judgment in their favor and against Defendants as follows:

a. For an Order certifying the Class, as defined above, and appointing Plaintiff and their Counsel to represent the Class;

b. For damages, including compensatory, punitive, incidental, consequential and exemplary damages, in an amount determined to be just and reasonable;

c. For an award of attorney's fees, costs, and litigation expenses, as allowed by law;

d. For pre- and post-judgment interest on all amounts awarded;

e. For injunctive and declaratory relief, as allowed by law; and

f. Such other and further relief as this Court may deem just and proper.

## <u>JURY DEMAND</u>

Trial by jury is demanded.

Dated: November 4, 2024                    Respectfully submitted,

<u>/s/ MaryBeth V. Gibson</u>
MaryBeth V. Gibson
GA Bar No. 725843
**Gibson Consumer Law Group, LLC**
4279 Roswell Road
Suite 208-108
Atlanta, GA  30342
Telephone: (678) 642-2503
marybeth@gibsonconsumerlawgroup.com